**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 27, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP458**

Cir. Ct. No. **2023CV66**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

WISCONSIN DAIRY ALLIANCE INC. AND VENTURE DAIRY COOPERATIVE,

    PLAINTIFFS-APPELLANTS,

 V.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES AND WISCONSIN NATURAL RESOURCES BOARD,

    DEFENDANTS-RESPONDENTS,

WISCONSIN FARMERS UNION AND CLEAN WISCONSIN,

    INTERVENORS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Calumet County: CAREY J. REED, Judge. *Affirmed*.

Before Neubauer, P.J., Gundrum, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Wisconsin Dairy Alliance Inc. and Venture Dairy Cooperative (collectively, "WDA") appeal an order of the circuit court that dismissed their declaratory action seeking to invalidate two administrative rules found in WIS. ADMIN. CODE ch. NR 243 (Nov. 2024).[1]   On appeal, WDA argues the rules exceed the agency's statutory authority and conflict with state law.   We conclude the rules are lawful and affirm.

## BACKGROUND

¶2    WDA filed a declaratory action against the Wisconsin Department of Natural Resources and the Wisconsin Natural Resources Board (collectively, DNR), seeking to invalidate two DNR rules relating to large concentrated animal feeding operations ("CAFOs")[2] and Wisconsin Pollutant Discharge Elimination System ("WPDES") permits.   One rule generally requires an owner of a large CAFO that stores manure or process wastewater at or below grade or land applies manure or process wastewater to have a WPDES permit.   *See* WIS. ADMIN. CODE § NR 243.11(3).   The other rule, a definition, defines "[a]gricultural storm water discharge" in a way that, according to WDA, also requires an owner of a large CAFO to have a WPDES permit.   *See* WIS. ADMIN. CODE § NR 243.03(2).   In its complaint, WDA alleged the rules were unlawful because they exceeded the DNR's statutory authority and conflicted with state law.

---

[1]   All references to WIS. ADMIN. CODE ch. NR 243 are to the November 2024 Register.

[2]   A "Large CAFO" is "an animal feeding operation that has 1,000 animal units or more at any time."   WIS. ADMIN. CODE § NR 243.03(31).

¶3    The DNR disputed WDA's allegations.  The Wisconsin Farmers Union and Clean Wisconsin (collectively, WFU) intervened into the action and generally aligned themselves with the DNR.  WDA and the DNR filed cross-motions for summary judgment.  WFU filed a brief in support of the DNR's summary judgment motion and in opposition to WDA's summary judgment motion.  Following a hearing, the circuit court determined the rules did not exceed the DNR's statutory authority and did not conflict with state law.  It granted judgment in favor of the DNR, and it dismissed WDA's declaratory action.  WDA appeals.

## DISCUSSION

¶4    As a threshold matter, both the DNR and WFU argue, as they did in the circuit court, that we need not reach the merits of WDA's claims on the basis that WDA has failed to establish any injury or harm from the challenged rules.  Therefore, as argued by the DNR, WDA lacks standing to challenge the rules, *see Friends of Black River Forest v. Kohler Co.*, 2022 WI 52, ¶¶20-23, 402 Wis. 2d 587, 977 N.W.2d 342, and, as argued by WFU, this declaratory action is not properly before the court because WDA failed to satisfy three of the four justiciable factors (failure to state a claim, standing, and ripeness), *see Loy v. Bunderson*, 107 Wis. 2d 400, 410, 320 N.W.2d 175 (1982).  WDA replies that it established injury.  Because we ultimately agree with the DNR and WFU that, on the merits, the challenged rules do not exceed the DNR's statutory authority and do not conflict with state law, we do not address the DNR's and WFU's standing and justiciable arguments.  *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases decided on narrowest possible ground).

¶5    On the merits, and in order to put WDA's arguments into context, we begin with a discussion of federal and state water pollution control programs, related state water protection statutes and regulations, CAFOs, and the rulemaking process for the challenged rules at issue in this case. We then turn to WDA's arguments regarding the validity of the rules.

## I.    Federal and state water pollution control programs and related state water protection statutes and regulations

¶6    Congress enacted the Clean Water Act with the "goal that the discharge of pollutants into the navigable waters be eliminated[.]" 33 U.S.C. § 1251(a)(1). To achieve that goal, Congress established a system whereby point sources,[3] including CAFOs, could not discharge pollutants into waters of the United States without a National Pollution Discharge Elimination System (NPDES) permit. *See* 33 U.S.C. §§ 1311(a), 1342, 1362. Congress conferred NPDES permitting authority to the Environmental Protection Agency (EPA). Sec. 1342(a).

¶7    The EPA is permitted to delegate its authority to a state agency so long as the state program imposes standards at least as stringent as those of the federal program. 33 U.S.C. § 1342(b). State programs, however, may impose more stringent requirements. ***Niagara of Wis. Paper Corp. v. DNR***, 84 Wis. 2d

---

[3] The term "point source" is defined to mean "any discernible, confined and discrete conveyance ... from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). Notably, the Clean Water Act includes "concentrated animal feeding operation" as an example of a point source. *Id.* Wisconsin similarly defines a "[p]oint source" as "[a] discernible, confined, and discrete conveyance, including … [a] concentrated animal feeding operation, … from which pollutants may be discharged … into the waters of the state." WIS. STAT. § 283.01(12)(a) (2023-24).

All references to the Wisconsin Statutes are to the 2023-24 version.

4

32, 38, 268 N.W.2d 153 (1978).  The EPA has allowed Wisconsin to administer its own permitting scheme since 1974.  *See Andersen v. DNR*, 2011 WI 19, ¶37, 332 Wis. 2d 41, 796 N.W.2d 1; *see also* 33 U.S.C. § 1342(b); WIS. STAT. ch. 283.

¶8      Wisconsin's permitting program, WPDES, is found in WIS. STAT. ch. 283.  As a whole, chapter 283 "espouses a very similar objective to that of the Clean Water Act."    *Andersen*, 332 Wis. 2d 41, ¶43 (citing WIS. STAT. § 283.001(1)).  To effectuate the policy in ch. 283, the Legislature granted to the DNR "all authority necessary to establish, administer and maintain a state pollutant discharge elimination system ... consistent with all the requirements of the [Clean Water Act]."  Sec. 283.001(2).  WISCONSIN STAT. § 283.31(1) prohibits "[t]he discharge of any pollutant into any waters of the state … unless such discharge … is done under a [WPDES] permit issued by the department under this section or [WIS. STAT. §] 283.33 [storm water discharge permits]."

¶9      The DNR is also charged with "promulgat[ing] rules relating to applications for permits … which shall require at a minimum that every owner or operator of a point source discharging pollutants into waters of the state shall have on file … a completed permit application[.]"  WIS. STAT. § 283.37(1).  Permits last five years.  WIS. STAT. § 283.53(1).  An application to reissue a permit must be filed 180 days before expiration.  Sec. 283.53(3)(a).  Similarly, applications for a

WPDES permit from a new source must be submitted not later than 180 days before discharging. Sec. 283.37(2).[4]

¶10 The Legislature also outlined statutory conditions under which the DNR "may," and "shall" not, issue WPDES permits. WIS. STAT. § 283.31(2)-(3). Broadly, any WPDES permit must meet all of the following conditions:

(a) Effluent limitations.

(b) Standards of performance for new sources.

(c) Effluent standards, effluents prohibitions and pretreatment standards.

(d) Any more stringent limitations, including those:

1. Necessary to meet federal or state water quality standards, or schedules of compliance established by the department; or

2. Necessary to comply with any applicable federal law or regulation; or

3. Necessary to avoid exceeding total maximum daily loads established pursuant to a continuing planning process developed under [WIS. STAT. §] 283.83.

---

[4] WISCONSIN STAT. § 283.37(2) provides:

Any owner or operator of a point source for which a permit is required by [WIS. STAT. §] 283.31(1) wishing to commence discharging pollutants into state waters from a new source, the construction of which commenced after July 22, 1973, shall submit a completed application not later than 180 days prior to the date on which it is desired to commence discharges.

"Construction" as used in WIS. STAT. § 283.37(2) means "any placement, assembly or installation of facilities or equipment, including contractual obligations to purchase such facilities or equipment, at the premises where such equipment will be used, including preparation work at such premises." WIS. STAT. § 283.01(2).

(e) Any more stringent legally applicable requirements necessary to comply with an approved areawide waste treatment management plan.

(f) Groundwater protection standards established under [WIS. STAT.] ch. 160.

Sec. 283.31(3). The DNR must also prescribe conditions for WPDES permits "to assure compliance" with the Legislature's statutory permit requirements. Sec. 283.31(3)-(5); *see also* ***Clean Wis., Inc. v. DNR*** ("***Clean Water I***"), 2021 WI 71, ¶40, 398 Wis. 2d 386, 961 N.W.2d 346 (Sec. 283.31(3)-(5) and related regulations give the DNR explicit authority to impose conditions on WPDES permits).

¶11 Outside of WIS. STAT. ch. 283's "PERMITS" subchapter, in ch. 283's "STANDARDS; EFFLUENT LIMITATIONS" subchapter, the DNR is additionally charged with promulgating rules on effluent limitations,[5] standards of performance for new sources,[6] and other effluent prohibitions and pretreatment standards. WIS. STAT. § 283.11(1). Section 283.11(2), which WDA refers to as the uniformity mandate, provides generally that rules must comply with and not exceed the requirements of the Clean Water Act and associated federal regulations.

¶12 Wisconsin's WPDES permit program is broader than the Clean Water Act. ***Maple Leaf Farms, Inc. v. DNR.***, 2001 WI App 170, ¶10, 247

---

[5] An "[e]ffluent limitation" is "any restriction established by the department, including schedules of compliance, on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into waters of this state." WIS. STAT. § 283.01(6).

[6] A "[n]ew source" is generally "any point source the construction of which commenced after the effective date of a standard of performance under 33 USC 1316 that is applicable to the point source." WIS. STAT. § 283.01(8)(a).

Wis. 2d 96, 633 N.W.2d 720. The Clean Water Act does not provide regulatory protection for groundwater. *Id.* However, Wisconsin's WPDES program applies to "[w]aters of the state," which includes groundwater. *See* WIS. STAT. §§ 283.01(20); 283.31(1). Further, as noted above, the Legislature has mandated that any WPDES permit incorporate Wisconsin's "[g]roundwater protection standards established under [WIS. STAT.] ch. 160." Sec. 283.31(3)(f).

¶13 In WIS. STAT. ch. 160, "The Legislature gave the DNR broad authority to establish, monitor, and enforce health-based groundwater standards … which resulted in the promulgation of WIS. ADMIN. CODE ch. NR 140." *Clean Wisconsin I*, 398 Wis. 2d 386, ¶30. "Chapter 140 contains the State's groundwater standards and provides that the DNR 'may take any actions within the context of regulatory programs established in statutes or rules outside of this chapter, if those actions are necessary to protect public health and welfare or prevent a significant damaging effect on groundwater or surface water quality.'" *Id.* (quoting WIS. ADMIN. CODE § NR 140.02(4)). "Chapter 140 applies to all facilities regulated by WIS. STAT. ch. 283." *Id.* (citing WIS. ADMIN. CODE § NR 140.03).

¶14 Also relevant is WIS. STAT. ch. 281. There, the Legislature "granted the DNR the 'necessary powers' to enhance the 'quality management and protection of all waters of the state' against 'all present and potential sources of water pollution.'" *Clean Wis., Inc. v. DNR* ("*Clean Wisconsin II*"), 2021 WI 72, ¶13, 398 Wis. 2d 433, 961 N.W.2d 611 (quoting WIS. STAT. § 281.11). More specifically, the Legislature delegated supervision and control over waters of the state to the DNR. *Id.* (citing WIS. STAT. § 281.12(1)). This delegation of authority was broad but explicit. Sec. 281.12; *Clean Wisconsin II*, 398 Wis. 2d 433, ¶25 ("The text of § 281.12 explicitly requires the DNR to 'carry out the

planning, management[,] and regulatory programs necessary' to achieve the purpose of ch. 281."). WISCONSIN STAT. ch. 281 further directs the DNR to formulate "plans and programs for the prevention and abatement of water pollution." Sec. 281.12(1).

## II. CAFOs and WIS. ADMIN. CODE ch. NR 243

¶15 In 2007, pursuant to the statutory authority in "[WIS. STAT.] chs. 281 and 283," the DNR promulgated WIS. ADMIN. CODE ch. NR 243 to, in part, "establish permit requirements and the basis for issuing permits to CAFOs." WIS. ADMIN. CODE § NR 243.01(1). CAFOs are "'a specific type of large-scale industrial agricultural facility that raises animals, usually at high-density, for the [production] of meat, eggs, or milk.'" *Clean Wisconsin I*, 398 Wis. 2d 386, ¶18 (citation omitted). "Due to their size, CAFOs produce as much manure—waste— as do small and medium-size cities." *Id.* CAFOs are statutorily required to apply to the DNR for a WPDES permit before discharging pollutants because they are "[p]oint source[s]" as defined in WIS. STAT. § 283.01(12). *See also* WIS. STAT. §§ 283.31(1); 283.37.

¶16 During the rulemaking proceedings for WIS. ADMIN. CODE ch. NR 243, the DNR convened a Technical Advisory Committee to assess the proposed rules' practical viability. The committee consisted of state and federal agency experts and interested persons and groups, including representatives of CAFOs. Based on its scientific review and input from the committee members, the DNR found that "current science supports that all manure or process wastewater storage systems leak some pollutants to groundwater, and that land application of manure or process wastewater will result in a discharge of pollutants to groundwater." The DNR ultimately concluded that "all *large* CAFOs that land

apply manure or process wastewater or that have storage structures at or below grade have actual discharges." (Emphasis added.)

¶17 Based on the factual record, the DNR promulgated WIS. ADMIN. CODE § NR 243.11(3), which provides:

> (a) Except as provided in par. (b), any person owning or operating a large CAFO that stores manure or process wastewater in a structure that is at or below grade or that land applies manure or process wastewater shall have a WPDES permit. A discharge of pollutants from manure or process wastewater to waters of the state by an unpermitted animal feeding operation with 1,000 animal units or more is prohibited. A pasture or grazing area may operate without WPDES permit coverage.
>
> (b) If a person owns or operates an animal feeding operation with 999 animal units or less, and that person expands its operation to 1000 animal units or more due to the purchase of another animal feeding operation, that person has 90 days from the date of the purchase to apply for a WPDES permit.

*Id.* The large-CAFO-permit rule is the first challenged rule.

¶18 The DNR also promulgated definitions that "are applicable to terms used in this chapter." WIS. ADMIN. CODE § NR 243.03. It defined "Agricultural storm water discharge" to mean:

> (a) For unpermitted animal feeding operations with 300 to 999 animal units, a precipitation-related discharge of manure or process wastewater pollutants to surface waters from a land application area that may occur after the owner or operator of the animal feeding operation has land applied manure or process wastewater in compliance with a nutrient management plan that meets the nutrient management requirements of this chapter; and
>
> (b) For permitted CAFOs, a precipitation related discharge of manure or process wastewater pollutants to surface waters from a land application area that may occur after the owner or operator of the CAFO has land applied the manure or process wastewater in compliance with the

> nutrient management requirements of this chapter and the terms and conditions of its WPDES permit.

Sec. NR 243.03(2). The definition—specifically, subsection (b)'s reference to permits is the second challenged rule.

## III.    Validity of the DNR's rules

¶19    The issues on appeal concern the validity of WIS. ADMIN. CODE §§ NR 243.11(3) (the large-CAFO-permit rule) and NR 243.03(2) (the "[a]gricultural storm water discharge" definition). Pursuant to WIS. STAT. § 227.40(4)(a), a litigant may challenge the validity of an administrative rule on one of three grounds—that the rule "violates constitutional provisions or exceeds the statutory authority of the agency or was promulgated or adopted without compliance with statutory rule-making or adoption procedures." *Id.* In this case, WDA argues that both rules exceed the DNR's statutory authority and conflict with state law. In its summary judgment motion, WDA also explicitly advised, "[T]his lawsuit does not challenge the factual basis for the DNR rules at issue" or assert that either rule includes a constitutional due process claim.

¶20    This Court "review[s] a grant of summary judgment de novo." *Munger v. Seehafer*, 2016 WI App 89, ¶46, 372 Wis. 2d 749, 890 N.W.2d 22. Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). We also review de novo whether a rule exceeds an agency's statutory authority or conflicts with a statute. *Debeck v. DNR*, 172 Wis. 2d 382, 386, 493 N.W.2d 234 (Ct. App. 1992).

### A. Large-CAFO-permit rule

¶21 We begin with the rule that large CAFOs obtain a WPDES permit. WDA argues this rule exceeds the DNR's statutory authority in two ways. First, it asserts the rule conflicts with state law, namely the "uniformity provision" found in WIS. STAT. § 283.11(2)(a). *See* WIS. STAT. § 227.10(2) ("No agency may promulgate a rule which conflicts with state law."). Second, WDA argues this rule is invalid because no statute "explicitly authorizes or requires the DNR to 'promulgate rules' to require operators or owners of certain point sources to obtain WPDES permits." We address each argument in turn.

### 1. Conflict with WIS. STAT. § 283.11(2)(a)

¶22 WDA argues the large-CAFO-permit rule is invalid because it conflicts with state law, specifically the "uniformity provision" found in WIS. STAT. § 283.11(2)(a). That statute provides:

> Except for rules concerning storm water discharges for which permits are issued under [WIS. STAT. §] 283.33 [storm water discharge permits], all rules promulgated by the department under this chapter as they relate to point source discharges, effluent limitations, municipal monitoring requirements, standards of performance for new sources, toxic effluent standards or prohibitions and pretreatment standards shall comply with and not exceed the requirements of the [Clean Water Act], and regulations adopted under that act.

*Id.*

¶23 WDA argues the large-CAFO-permit rule was "promulgated … under [WIS. STAT. ch. 283]" and "relate[s] to point source discharges," as those phrases are used in the uniformity provision, and therefore, as a threshold matter, the rule is subject to the uniformity provision.

¶24 WDA also asserts the rule "exceed[s] the requirements of the [Clean Water Act] and regulations adopted under the act." *See* WIS. STAT. § 283.11(2)(a). In support, WDA explains the EPA had a similar rule that required CAFOs to obtain a NPDES permit if the farm was "constructed, operated, and maintained in a manner such that the CAFO will discharge," but the Fifth Circuit invalidated that rule on the basis that the EPA did not have authority to impose a duty to apply for a permit before there was a discharge or to impose failure-to-apply liability. *National Pork Producers Council v. EPA*, 635 F.3d 738, 750-52 (5th Cir. 2011). WDA argues that "[i]n contrast to current federal law," the DNR's large-CAFO-permit rule creates a "duty to apply" and corresponding failure-to-apply liability. It asserts that failure-to-apply liability is in addition to the liability that may be imposed on a large CAFO for an unauthorized discharge. *See* WIS. STAT. § 283.91(2)-(3) (A person may be prosecuted for any violation of WIS. STAT. ch. 283 or "any rule promulgated under this chapter."). Because this "duty to apply" and corresponding failure-to-apply liability exceed federal law, WDA contends the uniformity provision should be used to invalidate the DNR's large-CAFO-permit rule.

¶25 Both the DNR and WFU initially respond, in part, that the uniformity provision is inapplicable to the large-CAFO-permit rule because the challenged rule does not "relate to point source discharges," *see* WIS. STAT. § 283.11(2)(a), and the rule was promulgated under *both* WIS. STAT. chs. 281 and 283, WIS. ADMIN. CODE § NR 243.01(1). They explain the uniformity provision is designed to apply to instances where the DNR has set numerical effluent limits or similar requirements that are more stringent than federal standards. *See, e.g.*, *Wisconsin Elec. Power Co. v. DNR*, 93 Wis. 2d 222, 243, 287 N.W.2d 113 (1980) (under uniformity provision, state chlorine limitations needed to be modified to

meet less stringent federal chlorine limitations); *Maple Leaf*, 247 Wis. 2d 96, ¶20 ("[U]niformity argument is most compelling for end-of-pipe discharges where the EPA imposes specific discharge limits from defined categories of pollution sources, such as paper mills and power plants.").

¶26    The DNR and WFU also argue that the uniformity provision is inapplicable to the large-CAFO-permit rule because WIS. ADMIN. CODE § NR 243.11(3) does not exceed any federal requirement. They argue the WPDES program is broader and more stringent than federal law because it includes protection for groundwater. They emphasize the rulemaking record established the large-CAFO-permit rule was created because of large CAFOs' actual discharges into groundwater.

¶27    We do not resolve the dispute about whether the large-CAFO-permit rule "relates to a point source discharge" or whether the fact it was promulgated pursuant to authority given in WIS. STAT. chs. 281 *and* 283 limit the uniformity provision's application. Instead, we conclude the uniformity provision does not limit the large-CAFO-permit rule because the rule does not exceed any federal requirement. In *Maple Leaf*, 247 Wis. 2d 96, ¶16, we concluded the uniformity provision applies to limit the DNR's authority "only where the federal program regulates the activity in question." Here, WDA's argument assumes the WPDES permitting regime is identical to the Clean Water Act and associated regulations, but, as we have already explained, Wisconsin's water protection is broader than the Clean Water Act because it includes protection for groundwater. *See id.*, ¶10.

¶28    The rulemaking record included in this case reveals the DNR's large-CAFO-permit rule was promulgated to protect Wisconsin's groundwater. The Clean Water Act does not regulate groundwater. *Id.*, ¶10. Because the

federal program does not regulate groundwater protection, the DNR's large-CAFO-permit rule does not conflict with the uniformity provision in WIS. STAT. § 283.11(2)(a). *See Maple Leaf*, 247 Wis. 2d 96, ¶21 (Because the federal program did not regulate the activity in question, "the uniformity provision is not relevant to our statutory analysis" of whether the DNR had statutory authority to pass the rule). We therefore reject WDA's argument that the large-CAFO-permit rule exceeds the DNR's statutory authority because it conflicts with state law, namely the uniformity provision in § 283.11(2)(a).

¶29 Moreover, we disagree with WDA that, because the federal courts prohibit the EPA from adopting a rule that creates a duty to apply before discharging and corresponding "failure-to-apply" liability, that the DNR is subject to a similar limitation. As the DNR points out, WIS. STAT. § 283.37(2) requires a point source to apply for a WPDES permit at least 180 days *before* it discharges a pollutant. Similarly, applications to reissue a permit must be filed 180 days *before* expiration. WIS. STAT. § 283.53(3)(a). Any duty to apply before discharging and corresponding failure-to-apply liability exists within the statutory scheme itself and was not created simply by the DNR's large-CAFO-permit rule.

## 2. Statutory Authority

¶30 We now turn to whether the DNR has statutory authority to promulgate the large-CAFO-permit rule. WDA's appellate argument focuses on WIS. STAT. § 283.001. WDA argues it was error of the circuit court to rely on § 283.001 as authority for the DNR rule because § 283.001 describes the Legislature's statement of policy and purpose in enacting chapter 283 as well as the DNR's general duties under the chapter. WPA observes that under 2011 Wis. Act 21 ("Act 21"), the Legislature amended WIS. STAT. ch. 227, in part, to

eliminate implied agency authority and to prohibit agency rulemaking without explicit authority. *See* WIS. STAT. § 227.11(2)(a)1.-2. WDA asserts WIS. STAT. § 283.001 provides no rulemaking authority and "[t]he circuit court … did not identify any statute that explicitly authorizes or requires the DNR to 'promulgate rules' to require operators or owners of certain point sources to obtain WPDES permits."

¶31    WFU responds that WDA is attempting to use Act 21's revisions to narrow the DNR's rulemaking authority in a way that "retroactively, renders this 2007 rulemaking invalid by taking any reliance on WIS. STAT. § 283.001 off the table." Alternatively, WFU and the DNR contend that WDA's sole focus on § 283.001 ignores other statutory provisions found in WIS. STAT. chs. 283, 281, and 160 that confer broad authority on the DNR and authorize it to promulgate rules necessary to prevent pollution from reaching groundwater. WFU and the DNR provide an overview of various statutes and explain why each provides statutory authority for the DNR's large-CAFO-permit rule.

¶32    At the outset, we are uncertain of the interplay between the challenged rule, which the parties advise was promulgated in 2007 and remains unchanged, and WIS. STAT. § 227.11(2)(a)1.-2. After all, Act 21, § 9355, provides "The renumbering and amendment of section 227.11(2)(a) of the statutes and the creation of section 227.11(2)(a)1. to 3. of the statutes *first* apply to a proposed administrative rule submitted to the legislative counsel staff under [WIS. STAT. §] 225.15 of the statutes on the effective date of this subsection." (Emphasis added.) Here, Act 21 became effective in 2011, but the challenged rule was promulgated in 2007.

¶33 In any event, we need not resolve this uncertainty because we agree with the DNR and WFU that, as explained below, the DNR had explicit statutory authority to promulgate the large-CAFO-permit rule. Although the DNR and WFU offer and analyze multiple statutes in WIS. STAT. chs. 283, 281, and 160, which they assert authorize the DNR to promulgate this rule, our focus need go no further than WIS. STAT. § 283.37.

¶34 When determining whether the Legislature gave express authority for a rule, we identify the elements of the enabling statute and match the rule against those elements. *See Wisconsin Ass'n of State Prosecutors v. WERC*, 2018 WI 17, ¶39, 380 Wis. 2d 1, 907 N.W.2d 425. This is known as the elemental approach. *Id.* If the rule matches the statutory elements, then the statute expressly authorizes the rule. *Id.* However, "the enabling statute need not spell out every detail of the rule. If it did, no rule would be necessary." *Id.*, ¶38 (citation omitted).

¶35 Under the elemental approach, we conclude the DNR had explicit statutory authority to promulgate WIS. ADMIN. CODE § NR 243.11(3). WISCONSIN STAT. § 283.37(1) unambiguously directs the DNR to "promulgate rules relating to applications for permits" requiring "at a minimum" that any discharging point source have a completed WPDES application on file. CAFOs are point sources. WIS. STAT. § 283.01(12)(a). During the 2007 rulemaking proceedings, the DNR determined *large* CAFOs discharge to the groundwater. The DNR then promulgated a rule requiring large CAFOs to have a WPDES permit. *See* § NR 243.11(3). We reject WDA's argument that § NR 243.11(3) exceeds the DNR's statutory authority.

17

**B. "Agricultural storm water discharge" definition**

¶36 We now turn to the second challenged rule, the DNR's definition of agricultural storm water discharge. As stated above, the DNR defined, "Agricultural storm water discharge," as used in WIS. ADMIN. CODE ch. 243, to mean:

> (a) For unpermitted animal feeding operations with 300 to 999 animal units, a precipitation-related discharge of manure or process wastewater pollutants to surface waters from a land application area that may occur after the owner or operator of the animal feeding operation has land applied manure or process wastewater in compliance with a nutrient management plan that meets the nutrient management requirements of this chapter; and

> (b) For permitted CAFOs, a precipitation related discharge of manure or process wastewater pollutants to surface waters from a land application area that may occur after the owner or operator of the CAFO has land applied the manure or process wastewater in compliance with the nutrient management requirements of this chapter and the terms and conditions of its WPDES permit.

WIS. ADMIN. CODE § NR 243.03(2). WDA argues the DNR's definition is "too narrow[]" because the definition requires a large CAFO to "have and comply with a WPDES permit for any of its run-off to qualify as an agricultural storm water discharge." It asserts this definition exceeds the DNR's statutory authority because it conflicts with the "statutory permitting and liability exemption" in WIS. STAT. §§ 283.01(12) and 283.31(1). Alternatively, WDA argues the definition conflicts with another uniformity mandate, this one found in WIS. STAT. § 283.11(2)(b), which we will call the "stringency provision." [7]

---

[7] WDA advises that it is *not* arguing "this rule lacks explicit statutory authority as required by WIS. STAT. § 227.11(2)(a)1. and 2."

**1. Conflict with WIS. STAT. §§ 283.01(12) and 283.31(1)**

¶37　As stated previously, CAFOs are statutorily required to apply to the DNR for a WPDES permit before discharging pollutants because they are "[p]oint source[s]" as defined in WIS. STAT. § 283.01(12). *See also* WIS. STAT. §§ 283.31(1); 283.37. An "agricultural storm water discharge" is excluded from the definition of a point source. Sec. 283.01(12). WDA explains an "agricultural storm water discharge" is deemed a nonpoint source discharge. It states a nonpoint source discharge is "exempt from … WPDES permitting requirements and from liability for point source discharges."

¶38　On appeal, WDA argues the DNR's definition of "[a]gricultural storm water discharge" conflicts with WIS. STAT. §§ 283.01(12) and 283.31(1) because the definition requires a large CAFO to obtain a WPDES permit to receive liability exemption for its nonpoint source discharges. WDA also objects to the fact that the DNR's definition of agricultural storm water discharge only discusses "precipitation-related discharge[s] … to surface waters" and does not discuss precipitation-related discharges to groundwater. *See* WIS. ADMIN. CODE § NR 243.03(2). It asserts both are nonpoint source discharges.

¶39　The DNR and WFU respond that the definition does not conflict with any statutory liability exemption for agricultural storm water discharges. They argue that the definition merely reflects that, pursuant to the large-CAFO-permit rule (which we have already deemed lawful), a large CAFO will have a WPDES permit. The DNR also argues it is erroneous for WDA to assert that a CAFO is exempt from liability for nonpoint source discharges. It asserts:

> the statutes do not "eliminate liability" for nonpoint source pollution—to the contrary, there exists an entire body of

19

statu[t]es and regulations governing agricultural nonpoint source pollution.

*See*, *e.g.*, WIS. STAT. § 281.16(3); WIS. ADMIN. CODE §§ NR 151.01-097.

¶40     In reply, WDA agrees with the DNR regarding nonpoint source discharge liability but argues the definition makes a large CAFO liable for a nonpoint source discharge under the *point-source* regulatory regime.

¶41     We do not perceive a conflict between the DNR's definition of "[a]gricultural storm water discharge" and WIS. STAT. §§ 283.01(12) or 283.31(1). We also do not agree with WDA that the definition's reference to permitted CAFOs somehow creates "point source discharge" liability for a large CAFO's "nonpoint source discharges." Instead, we agree with the DNR and WFU that the definition merely reflects that large CAFOs will have a WPDES permit. The definition does not create an independent permit requirement. The large-CAFO-permit rule is found in WIS. ADMIN. CODE § NR 243.11(3) and we have already determined that provision is valid.

## 2. Conflict with WIS. STAT. § 283.11(2)(b)

¶42     WDA then argues the definition conflicts with the stringency provision found in WIS. STAT. § 283.11(2)(b). The stringency provision provides: "Rules concerning storm water discharges may be no more stringent than the requirements under the [Clean Water Act], and regulations adopted under that act." ***Id.***

¶43     WDA argues the stringency provision applies to limit the DNR's definition of "[a]gricultural storm water discharge" because it is a rule concerning "storm water discharges," and the rule is "more stringent" than the Clean Water

Act. WDA asserts federal law does not require a farm to have NPDES permit for its run-off to qualify as an agricultural storm water discharge and be exempt from liability.

¶44 The DNR and WFU both respond WDA's reliance on the stringency provision is entirely misplaced. They argue the term "storm water discharges" as used in the stringency provision does not include "agricultural storm water discharges." They explain storm water discharges are regulated by an entirely different regulatory scheme, WIS. STAT. § 283.33. According to WFU, under the storm water discharge regime, the DNR has promulgated a different administrative chapter, WIS. ADMIN. CODE ch. NR 216. The stringency provision operates to ensure these "[r]ules concerning storm water discharges may be no more stringent" than federal requirements. *See* WIS. STAT. § 283.11(2)(b). As further support, WFU explains § 283.33 (storm water discharges) and WIS. STAT. § 283.11(2)(b) (stringency provision) were created at the same time in response to changes in the federal storm water discharge permit program.[8]

¶45 In any event, WFU and the DNR argue that even if the DNR's definition of "agricultural storm water discharges" was "a rule concerning storm water discharges," the definition is not more stringent than the federal standard because it places no additional burdens on large CAFOs. They explain that, because the large-CAFO-permit rule in WIS. ADMIN. CODE § NR 243.11(3) is

---

[8] *See* 1993 Wis. Act 16, §§ 2605 (creating WIS. STAT. § 147.021 "Storm water discharge permits") and 2616 (creating WIS. STAT. § 147.035(2)(b) "Rules concerning storm water discharges may be no more stringent than the requirements under the [Clean Water Act], and regulations adopted under that act.").

In 1996, WIS. STAT. § 147.021 was renumbered to WIS. STAT. § 283.33 and WIS. STAT. § 147.035(2)(b) was renumbered to WIS. STAT. § 283.11(2)(b). 1995 Wis. Act 227, §§ 852, 859.

lawful, the definition of "agricultural storm water discharge" merely recognizes that a large CAFO will have a permit.

¶46 We agree. First, we are not convinced that a rule concerning an "agricultural storm water discharge" is the same as a rule concerning a "storm water discharge" such that the stringency provision in WIS. STAT. § 283.11(2)(b) applies. However, we need not resolve this uncertainty because we conclude the definition is not more stringent than any federal requirement—the definition simply reflects the reality that, given WIS. ADMIN. CODE § NR 243.11(3), all large CAFOs will have a WPDES permit.

¶47 Because we conclude the two challenged rules do not conflict with state statutes and do not exceed the DNR's statutory authority, we affirm the circuit court's order granting summary judgment in favor of the DNR and dismissing WDA's declaratory action.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.